UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **Pizzeria Uno Corporation,** | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 09-12015-DJC |
| **Pizza by Pubs, Inc., Joseph M. Eways, II, and Laila E. Moore,** | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                               September 9, 2011

**I. Introduction**

Plaintiff Pizzeria Uno ("Uno") brought a complaint against its franchisee, Defendant Pizza By Pubs, Inc. ("PBP"), and PBP's controlling principals, Defendants Joseph Eways and Laila Moore, alleging nine separate counts of breach of contract. The first eight counts allege breaches of various franchise agreements entered into by the parties; the ninth count alleges the breach of a promissory note entered into by Uno and PBP, signed by Eways, and designed to resolve disputes between the parties as to the franchise agreements. Uno has moved for partial summary judgment, seeking 1) judgment as a matter of law as to Count IX, and 2) a ruling by the Court that PBP and Eways are barred from raising affirmative defenses to Counts I-VIII based on alleged defaults by Uno under the various franchise agreements occurring on or before February 19, 2009. For the reasons discussed below, Uno's motion for partial summary judgment is GRANTED.

**II.  Burden of Proof and Standard of Review**

A party moving for summary judgment bears the burden of "show[ing] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific evidence showing that there is a genuine, triable issue of fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court views the record in the light most favorable to the non-moving party, and draws all reasonable inferences in that party's favor.  O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  If after viewing the record in this light the Court determines that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.  Fed. R. Civ. P. 56 (a).

**III.  Background**

    **A.     Factual Background**

Plaintiff Uno is a franchisor of casual restaurants that serve Chicago-style deep-dish pizza and other foods and beverages. Between November 2000 and March 2004, Uno entered into a series of franchise agreements with Defendant PBP to open and operate four restaurants - one near Reading, Pennsylvania, one in Charlotte, North Carolina, one in Raleigh, North Carolina, and one in Myrtle Beach, South Carolina.  Defendant Eways (PBP's President) and his sister Defendant Moore (PBP's Secretary) each executed personal guarantees through which they jointly and

severally agreed to be bound by the franchise agreements and to guarantee to Uno and its successors that all of PBP's obligations and fees under the franchise agreements would be paid punctually to Uno. PBP, however, became unable to pay certain fees set forth in the franchise agreements.

On February 19, 2009, to consolidate PBP's arrears on the franchise agreements, Eways, individually and as President of PBP, executed a promissory note in favor of Uno. The note stated that PBP and Eways owed Uno $98,200. The note required PBP or Eways to make monthly payments beginning on April 1, 2009 and concluding on February 1, 2011, at which point PBP or Eways would be required to repay all remaining principal indebtedness and accrued interest. The note retired PBP's retrospective debts under the franchise agreements, not PBP's prospective obligations to make franchise payments to Uno; under the terms of the note PBP and Eways acknowledged that even after executing the note, the four franchise agreements remained in full force.

The note included different events that would require PBP or Eways to repay in full their debts to Uno immediately (rather than by February 1, 2011): first, if any of PBP's four franchises ceased operation (or if PBP or Eways sold or assigned the franchise agreements, business or buildings); second, if PBP failed to make prompt payments under the four franchise agreements; third, if PBP or Eways failed to make full payments under the note or failed to "fulfill any other obligation, term or condition due to [Uno] or its affiliates under this or any other contract with [Uno] or its affiliates." Note, D. 31-6 at 2-3.

Finally, under the terms of the note, PBP and Eways represented that as of the date of the note's signing, they were unaware of any defaults by Uno in connection with the franchise agreements, and that PBP and Eways "release[] and forever discharge[] [Uno], its affiliates,

subsidiaries, officers, directors and employees from any and all claims, demands or causes of action of any kind which [PBP and Eways] ha[ve] now or may have in the future arising from the beginning of time including the date of this Note in connection with the Franchise Agreements." Note, D. 31-6 at 3.

Beginning in April 2009, PBP failed to pay royalty fees, business co-op fees and other miscellaneous fees that were due to Uno under the terms of the franchise agreement governing the Reading franchise. Beginning in May 2009, PBP failed to pay similar fees in relation to the Charlotte, Raleigh and Myrtle Beach franchises.

On November 9, 2009, Uno's counsel sent a letter to PBP and Eways' counsel asserting that in failing to make payments under the franchise agreements, PBP and Eways had defaulted on the note, further asserting that the amounts due under the note were now due immediately and demanding payment in full. Defendants did not respond to the letter.

On December 1, 2009, PBP ceased operating the Charlotte franchise. By April 15, 2010, PBP had also ceased operating the Reading, Raleigh and Myrtle Beach franchises.

PBP and Eways failed to make their January 1, 2010 payment under the note. They have made no subsequent payments under the note.

On January 20, 2010, Uno filed for Chapter 11 bankruptcy and corporate restructuring, but continues to do business in the wake of its restructuring.

### B.     Procedural History

On November 24, 2009 - after PBP had failed to make payments to Uno under its franchise agreements but prior to the cessation of operations at PBP's four franchises - Uno filed a complaint in this Court alleging nine counts of breach of contract against the Defendants. On September 30,

2010, with leave of Court, Uno filed an amended complaint. The amended complaint includes eight counts of breach of contract related to the franchise agreements and associated personal guaranties provided by Defendants Eways and Moore - one count against PBP and one count against Eways and Moore for each of the four franchises. The ninth count in the complaint alleges that PBP and Eways breached the note.

Uno has now moved for partial summary judgment, seeking judgment as a matter of law as to Count IX and a ruling by the Court that PBP and Eways are barred from raising affirmative defenses to the first eight counts based on alleged defaults by Uno under the various franchise agreements occurring on or before February 19, 2009, the date the note was executed. After transfer of the case to this session, the Court held a hearing on Uno's motion and took the matter under advisement.

## IV. Discussion

### A.     Count IX - Breach of the Promissory Note by Eways and PBP

Under Massachusetts law, to prove a breach of contract claim, a plaintiff must show: 1) the existence of a valid and binding contract, 2) that the defendant breached the terms of the contract, and 3) that the plaintiff has suffered damages from the breach. Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1122 (1st Cir. 1995) (applying Massachusetts law). The Defendants do not dispute that the note is on its face a valid and binding contract or that Uno has suffered damages. See generally Defs. Memo, D. 35. They do, however, argue that it is too early in this litigation for the Court to determine whether the Defendants' conduct constitutes a breach of the note. Additionally, the Defendants argue that they should be excused from their obligations under the note for three reasons: Uno has breached its obligations under the covenant of good faith and fair dealing implicit in the

note, the doctrine of impossibility excuses performance and the note itself was a product of economic duress. See Defs. Memo, D. 35 at 7. The Court will deal with each of these four arguments in turn.

### 1. Determination of whether Defendants breached the note is not premature

Defendants argue that "a determination of the parties' rights under the Promissory Note is predicated, first, on the parties' obligations and rights under the Franchise Agreements," and contend that the Court should deny summary judgment as to Count IX because "Uno does not request, and has not set forth, facts which would allow the Court to determine [PBP and Eways'] obligations [under the franchise agreements], and/or whether [PBP] and Eways are excused from performance under these Agreements." Defs. Memo, D. 35 at 7. Defendants cite to no legal authority nor any facts in the record in support of this position.

Defendants' position is inconsistent with a plain reading of the note. Under the terms of the note, PBP and Eways promise to pay a specified amount of principal and specified rates of interest to Uno. See Note, D. 31-6 at 1. This promise is independent of the prior dealings between Uno and the Defendants as enshrined in the franchise agreements. Id. The note also states that PBP and Eways are liable for immediate payment of their debt under the note if they cease operations at any of PBP's four franchises or if they fail to make full timely payments under the note. See Note, D. 31-6 at 2 (the note "shall immediately become due and payable" in the event that PBP or Eways cease operations at any of the four franchises), 3 ("[a]ny failure to make the full payment as set forth hereunder shall be a default"). The Court can easily determine whether these conditions have been met without referring to the underlying franchise agreements: the Defendants concede that they have ceased operations at all four franchises and they do not dispute that they have failed to make

their January 1, 2010 payment under the note or any subsequent monthly payments under the note (as distinguished from making their separate payments under the franchise agreements). Accordingly, without determining the parties' rights under the underlying franchise agreements, the Court can and does conclude that the Defendants have breached the express terms of the note.

### 2. Defendants' defense against Count IX alleging that Uno breached the covenant of good faith and fair dealing fails

Defendants argue that they are excused from performing under the note because, Defendants claim, Uno breached its implied covenant of good faith and fair dealing. Under Massachusetts law, "[e]very contract implies good faith and fair dealing between the parties to it." Warner Ins. Co. v. Comm'r of Ins., 406 Mass. 354, 362 n.9 (1990). "The implied covenant of good faith and fair dealing provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991) (quotations and citations omitted). A party that violates its obligation of good faith and fair dealing cannot claim contract damages if and when the other party breaches the contract at issue. See Hawthorne's, Inc. v. Warrenton Realty, Inc., 414 Mass. 200, 210-211 (1993) (party that "had committed a breach of the [contract] by violating its obligation of good faith and fair dealing" was "not entitled to contract damages").

Defendants argue that Uno breached the implied covenant of good faith and fair dealing in two ways: by failing to disclose its impending bankruptcy filing when it negotiated the note with Defendants, and by adding "higher-priced, up-scale items like lobster" to the menu. Defs. Memo, D. 35 at 10.

Defendants' argument regarding the Uno bankruptcy is baseless. First, Defendants cannot claim on the facts of this case that Uno's bankruptcy itself excuses Defendants' breach of the note,

since Uno filed for bankruptcy on January 20, 2010, after Defendants had already breached the note both by failing to make their monthly payment due on January 1, 2010 and by closing the Charlotte franchise on December 1, 2009. Defendants' position thus rests on their argument that "had Eways known that Pizzeria Uno was planning on filing for bankruptcy, he never would have signed the Promissory Note." Def. Memo, D. 35 at 9. But there is no evidence in the record that, at the time the note was executed, Uno was planning on filing for bankruptcy.[1] Even if such evidence existed, the proper legal test for a good faith and fair dealing affirmative defense is not whether Eways would have behaved differently had he known about Uno's plan, but whether Uno's plan for bankruptcy - again, not the bankruptcy filing itself, but the mere *plan* to file - "ha[d] the effect of destroying or injuring the right of" PBP and Eways "to receive the fruits" of the note. Anthony's Pier Four, 411 Mass. at 471 (quotations and citations omitted). Defendants cite to no law in support of the proposition that a Chapter 11 bankruptcy by a contracting party, let alone a mere plan by a contracting party to file for Chapter 11 bankruptcy, *per se* destroys or injures the other party's right to enjoy the fruits of any underlying contract, and point to no facts in the record showing that Uno's alleged plan had that effect here.

Defendants' argument regarding lobster is, legally if not taxonomically, a red herring. Defendants assert that Uno breached the covenant of good faith and fair dealing when it added to

---

[1]Defendants' sole basis for this argument is Eways' assertion that on January 19, 2010, "Pizzeria Uno indicated that it had been planning to file bankruptcy '[f]or the past year and a half." Eways Affidavit, D. 36 ¶ 15, quoting Eways Aff. Ex. 3, a document titles "Frequently Asked Questions (1/19/10) Franchise Owners." But the Eways Affidavit quotes Uno's "FAQ" document selectively. The full quotation is "For the past year and a half we have been working with owners, lenders and bondholders to reduce our debt and eliminate high interest payments in order to put Uno in a position for growth." Eways Aff. Ex. 3, D. 36 at 15. That statement does not show that Uno had already made plans to file for bankruptcy when Defendants executed the note on February 19, 2009. Defendants point to no other evidence in support of their argument.

its fare "items like lobster" and, in so doing, "became a completely different restaurant." Defs. Memo, D. 35 at 10. Defendants allege this occurred "[i]n 2005," id., four years before Defendants executed the note. Defendants' argument, whatever its merits, thus relates only to the underlying franchise agreements entered into by the parties between 2000 and 2004, not to the note, which is the sole subject of Count IX.

Accordingly, Defendants cannot prevail on their affirmative defense to Count IX based on allegations that Uno breached the implied covenant of good faith and fair dealing.

### 3. The doctrine of impossibility does not excuse Defendants from performance

Massachusetts "has long recognized and applied the doctrine of impossibility as a defense to an action for breach of contract." Chase Precast Corp. v. John J. Paonessa Co., Inc., 409 Mass. 371, 373 (1991). "Under that doctrine, where from the nature of the contract it appears that the parties must from the beginning have contemplated the continued existence of some particular specified thing as the foundation of what was to be done, then, in the absence of any warranty that the thing shall exist the parties shall be excused when performance becomes impossible from the accidental perishing of the thing without the fault of either party." Id. (citations, quotations and alterations by the Chase court removed).

Here, Defendants' impossibility defense rests entirely on its assertion that, in 2005, "Uno changed from a franchise whose signature item was the Chicago-style Deep Dish Pizza, to a franchise selling lobster sandwiches." Defs. Memo, D. 35 at 11. Again, whatever the merits of this assertion, it relates only to the Defendants' obligations under the franchise agreements entered into between 2000 and 2004, not to their obligations under the note, which they entered into four years after Uno had added lobster to its fare. On these facts, the doctrine of impossibility does not excuse

Defendants from performing under the note.

### 4. Defendants' economic duress claim is unavailing

Under the terms of the note, Defendants "represent[ed] that [they] ha[ve] reviewed th[e] Note, ha[ve] bargained for its terms, and ha[ve] not executed it under duress or deceit." Note, D. 31-6 at 4. Nevertheless, Defendants now claim that they only executed the note as a result of economic duress.

A contract entered into under economic duress is voidable. Cabot Corp. v. AVX Corp., 448 Mass. 629, 637 (2007). The standard for establishing economic distress under Massachusetts law is difficult to meet since:

> it is not infrequent that when two commercial parties enter into an agreement, one of them has a decided economic advantage over the other, and that the weaker party often must often enter into the bargain because of his economic circumstances, a disparity in bargaining power to his disadvantage, or some combination of the two. Because an element of economic duress is thus present when many contracts are formed or releases given, the ability of a party to disown his obligations under a contract or release on that basis is reserved for extreme and extraordinary cases. Hard bargaining is not unlawful; it is not only acceptable, but indeed, desirable, in our economic system, and should not be discouraged by the courts.

Id. at 639 (citations and quotations omitted). The elements of economic duress are "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party," that is, "the duress resulted from defendant's wrongful and oppressive conduct and not by plaintiff's necessities." Id. at 637-38 (quoting Int'l Underwater Contractors v. New Eng. Tel. & Tel. Co., 8 Mass. App. Ct. 340, 342 (1979)). Where both parties to a contract were represented by competent counsel during contract negotiation and the contract in question was designed to settle differences that arose during a course of business including multiple prior contractual agreements between the

parties, the three elements are strictly construed against the party asserting duress. Id. at 638. Additionally, even if a contract is formed under duress, the beleaguered party "must complain promptly of coercive acts that allegedly forced it into the contract or the defense of duress is waived, and the contract ratified." Id. at 642-43. A party ratifies a contract formed under duress "by remaining silent or acquiescing in the contract for a period of time" or "by acting upon it, performing under it, or by affirmatively acknowledging it." Id. at 643 (quoting In re Boston Shipyard Corp., 886 F.2d 451, 455 (1st Cir. 1989)).

Here, it is clear that Defendants ratified the note. Eways' counsel sent a letter to Uno on July 28, 2009 - more than five months after the note was signed on February 19, 2009 - asserting that "P[izza] B[y] P[ubs] plans to pay off all of its past due royalties and co-op fees" as set forth in the note. Eways Aff., Ex. 1, D. 36 at 10. Defendants do not dispute that they made payments under the note until December 2009, over ten months after executing the note. Indeed, the first time Defendants raised the possibility of duress was when they filed their answers this action on February 5, 2010, D. 9 and 10, nearly a year after signing the note and months after they had already made ten months' worth of payments thereunder. Thus, even if Defendants had entered into the note under economic duress, their subsequent conduct precludes any reliance on a duress defense. See, e.g., Abbadessa v. Moore Bus. Forms, Inc., 987 F.2d 18, 24 (1st Cir. 1993) (finding that delay of four months by one defendant and seven months by another precludes duress defense); In re Boston Shipyard, 886 F.2d at 455 (same for defendant's delay of eighteen months); Dorn v. Astra USA, 975 F.Supp. 388, 393-94 (D. Mass. 1997) (same for defendant's delay of eleven months); Cabot, 448 Mass. at 644-45 (same for defendant's delay of twelve months); see also id. at 645 (finding that defendant's making purchases under a supply contract constituted ratification); Deren v. Digital

Equip. Corp., 61 F.3d 1, 3 (1st Cir. 1995) (finding that performing for over three years under a contract constituted ratification); Beaconsfield Townhouse Condo. Trust v. Zussman, 49 Mass. App. Ct. 757, 763 (2000) (finding that performance under a guarantee constituted ratification of the guarantee).

Even if the Defendants had not ratified the note, the record in this case does not support the conclusion that Defendants were coerced into signing the note. Eways concedes that after the note was negotiated, Uno offered him a choice between one alternative, where Eways could reject the note and "continue to accrue increasing penalties under the Franchise Agreements for failure to make Fee payments that Uno's knew Pizza By Pubs could not afford to make," or another alternative wherein Eways could sign the note and "pay outstanding [f]ees, with interest, subject to non-negotiable, one-sided terms, thereby keeping the four restaurants afloat." Eways Aff., D. 36 ¶ 9.[2] Even crediting Eways' assertion in full, this is "hard bargaining," not coercion. Cabot, 448 Mass. at 637.

Because the undisputed facts establish all the elements of Uno's breach of contract claim with regard to the note as set forth in Count IX of the amended complaint and because Defendants' various affirmative defenses are all unavailing, summary judgment is appropriate as to Count IX.

### B.  Partial Summary Judgment as to Counts I-VIII: PBP and Eways have waived any affirmative defenses based on alleged defaults by Uno occurring on or before February 19, 2009

The note includes a provision stating:

[Eways and PBP] represent[] that the Franchise Agreements are in full force and effect, that they are unaware of any defaults in connection with the operation or

---

[2] According to Uno, the latter alternative included $48,000 of forgiveness on outstanding royalty fees. Second Houston Affidavit, D. 39 at ¶ 8.

> performance by either [Eways and PBP] or [Uno]. Furthermore, [Eways and PBP] release[] and forever discharge[] [Uno], its affiliates, subsidiaries, officers, directors and employees from any and all claims, demands or causes of action of any kind which [Eways and/or PBP] has now or may have in the future arising from the beginning of time including the date of this Note in connection with the Franchise Agreements.

Note, D. 31-6 at 3. Uno asks the Court to interpret this language to mean that Eways and PBP cannot, in any future proceedings, defend against Uno's various breach of franchise agreement claims by asserting that Uno itself breached the franchise agreements on or before February 19, 2009 and thus removed Eways and/or PBP's obligations to perform under the agreements. Eways and PBP argue that granting Uno's request would be tantamount to adding "new language" to the note, such "that a 'claim' or 'cause of action' be redefined to mean 'defense.'" Defs. Memo, D. 35 at 6.

The Court finds that the expansive language of the waiver in the note - "any and all claims, demands or causes of action of any kind" - is broad enough to encompass affirmative defenses. First, as a matter of plain meaning, an affirmative defense asserting that Uno breached the franchise agreemeents is a *kind* of claim, see MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 226 (11th ed. 2008) (defining "claim" variously as "an assertion open to challenge," "a demand for something due or believed to be due," and "a right to something, specif[ically], a title to a debt, privilege, or other thing in the possession of another"), and "[c]ontracts containing unambiguous language must be construed according to their plain and natural meaning." Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995). Such an affirmative defense would also be a *kind* of claim even under a more technical reading of "claim" as a legal term of art, see BLACK'S LAW DICTIONARY 281-82 (9th ed. 2009) (defining "claim" variously as "[t]he aggregate of operative facts giving rise to a right enforceable by a court," "the assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional," and "a demand for money, property

or a legal remedy to which one asserts a right"), since the affirmative defense would involve an assertion by Eways and PBP that they have a right to be free from liability for their own breach of the franchise agreements and a request that the Court enforce this right.

Second, as a general legal matter, there is no functional distinction between the burden of proof borne by a plaintiff raising a claim and that borne by a defendant raising an affirmative defense mirroring plaintiff's claim. Schaffer v. Weast, 546 U.S. 49, 67 (2005) ("the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions"). This general rule applies to both the claim and the affirmative defense of breach of contract under Massachusetts law. See, e.g., Prozinski v. Ne. Real Estate Servs., LLC, 59 Mass. App. Ct. 599, 612 (2003) (treating defendant's "affirmative defense and counterclaim for material breach of contract" as identical claims). Given this legal background, it is unsurprising that Eways and PBP have been unable to provide the Court with a case where a party was allowed to raise an affirmative defense of breach of contract after waiving its ability to raise a breach of contract claim. Defs. Memo, D. 35 at 6.[3]

Finally, as Uno points out, PBP and Eways' position runs counter to common sense: "[t]he Defendants' primary obligation under the Promissory Note is to make the required payments to Pizzeria Uno. It would be absurd to interpret the release contained in the Promissory Note as being

---

[3] The only case Defendants cite to that mentions the waiver of an affirmative defense is Wells Fargo Bus. Credit v. Environamics Corp., 77 Mass. App. Ct. 812 (2010), which makes only a passing mention when reciting the terms of a contract that stated a party waived "any claim, defense or setoff" against the other party. Id. at 825 n.16. Wells Fargo stands for the uncontroversial proposition that parties can draft a contract that discusses "claims" and "defenses" separately; it is of limited relevance to the question of whether an affirmative defense falls in the broad category of "any and all claims, demands or causes of action of any kind."

inapplicable where Pizzeria Uno has been forced to pursue the Defendants for failing to comply with their basic payment obligation." Pl. Reply, D. 38 at 2. "Common sense is as much a part of contract interpretation as is the dictionary," Fishman v. LaSalle Nat'l Bank, 247 F.3d 300, 302 (1st Cir. 2001), and the Court agrees that in this case common sense is in accord with a plain language interpretation holding that Eways and PBP have waived their ability to raise breach of contract as a defense arising out of events occurring on or before February 19, 2009.

Accordingly, the Court grants the partial summary judgment sought by Uno with regard to Counts I-VIII.

**V.  Conclusion**

For the reasons discussed above, Uno's motion for partial summary judgment is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge